UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:20-CV-69-RJ

CHARLENE MONTINA CHIFFIO POWELL,

   Plaintiff/Claimant,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

   Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-25, -26] pursuant to Fed. R. Civ. P. 12(c). Claimant Charlene Montina Chiffio Powell ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner for further proceedings consistent with this order.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on February 8, 2016, and for SSI on May 22, 2017,[1] alleging disability beginning February 8, 2016. (R. 15). Both claims

---

[1] Defendant asserts that Claimant filed her applications in June 2017, Def.'s Mem. [DE-27] at 2 n.1; however, the

were denied initially and upon reconsideration. (R. 116–229). A hearing before the Administrative Law Judge ("ALJ") was held on November 4, 2019, at which Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 41–89). On December 23, 2019, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–40). On September 25, 2020, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh

---

ALJ's decision and the administrative record indicate otherwise. The Appeals Council assigned a protective filing date of February 8, 2016 on the Title II claim, and Claimant's protective filing date for the Title XVI claim was May 22, 2017. (R. 112, 160–61, 228–29, 284, 353). The filing date is important because 20 C.F.R. §§ 404.1527 and 416.920, which include the treating physician rule, apply to claims filed prior to March 27, 2017, and 20 C.F.R. §§ 404.1520c and 416.920c, which eliminated the treating physician rule along with other material changes, apply to claims filed on or after March 27, 2017. The ALJ's decision expressly states that he applied §§ 404.1527 and 416.920, (R. 22), and the ALJ appears to have weighed the opinion evidence as required by those regulations, (R. 29–31). Claimant does not assert that the ALJ applied the incorrect regulation in evaluating the opinion evidence.

2

conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding,

3

remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ's decision is not supported by substantial evidence and the ALJ erred in (1) assessing Claimant's subjective complaints of pain, (2) weighing the medical opinion evidence, (3) formulating the hypothetical to the VE, (4) and evaluating Claimant's obesity. Pl.'s Mem. [DE-25-1] at 10–24.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since February 8, 2016, the alleged onset date. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: osteoarthritis, to include right ankle and bilateral knees; chondromalacia, right knee; bilateral knee dysfunction; degenerative disc disease of the lumbar spine; post-laminectomy syndrome; lumbar radiculopathy; lumbar spondylosis; obstructive sleep apnea; irritable bowel syndrome; chronic pain syndrome; obesity; depression; anxiety; panic disorder; somatic symptom disorder; and post-traumatic stress disorder. *Id.* The ALJ further stated that the record reflects the following additional medical conditions or impairments: allergic rhinitis, pharyngitis, sinusitis, hypertension, gastroesophageal reflux disease, anemia, acute vaginitis, urinary tract infection, callus of foot, corns on the toes, vitamin D deficiency, muscle cramps, abnormal uterine bleeding, lower extremity edema, furuncle, ovarian cyst, hammertoes, bilateral plantar fasciitis, chest pain, and headaches. *Id.* The ALJ found these conditions or impairments were either not medically determinable, did not meet

4

the twelve-month duration requirement, or did not have more than a minimal effect on Claimant's ability to do basic work activities.[2] *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–21). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in moderate limitations in understanding, remembering, or applying information; interacting with others; or adapting or managing oneself, and a mild limitation in concentrating, persisting, or maintaining pace. (R. 20–21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[3] with the following restrictions:

> occasionally push/pull and operate foot controls with both lower extremities; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance and stoop; never kneel, crouch and crawl; occasional exposure to vibration; no exposure to unprotected heights; and occasional exposure to hazardous machinery or hazardous moving mechanical parts. The claimant is limited to jobs that can be performed while using a handheld assistive device, a cane, required at all times when walking and the contralateral upper extremity could be used to lift and carry up to exertional limits. Claimant's work is limited to simple, routine and repetitive tasks but not at a production rate pace; simple work-related decisions; and occasional interaction with the public, co-workers and supervisors. She would be off task no more than ten percent of the time in an 8-hour workday, in addition to normal breaks (with normal breaks

---

[2] The ALJ's decision is problematic in that it fails to state which conditions are "not severe" and which are either "not medically determinable" or fail to meet the duration requirement. Impairments that are "not severe," unlike impairments that are "not medically determinable" or fail to meet the duration requirement, must still be considered in evaluating a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The ALJ's failure to distinguish among the three categories frustrates the court's review of the ALJ's step two and RFC determinations. On remand, the ALJ should make clear the determination in this regard.

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. SSR 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

5

defined as a ten to fifteen minute morning and afternoon break and a thirty minute lunch break).

(R. 21–31).[4]

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a fast food worker. (R. 31–32). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 32–33).

## V. DISCUSSION

### A. The RFC Assessment

Claimant contends the ALJ erred in formulating her RFC by failing to fully credit her statements regarding her subjective complaints of pain, failing to properly analyze the medical opinions, and failing to fully evaluate the effect of her obesity on her ability to sustain consistent performance at the sedentary level over a work week. Pl.'s Mem. [DE-25-1] at 11–24.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the

---

[4] In the case of *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), the Fourth Circuit determined that an RFC precluding a claimant from performing work "requiring a production rate or demand pace" did not provide enough information to understand what those terms meant and to assess whether their inclusion in the RFC addressed the claimant's limitations. 916 F.3d at 312. On remand, the ALJ should explain what is meant by "not a production rate pace."

6

individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### 1. Claimant's Subjective Statements

Claimant contends the ALJ erred by failing to find her complaints of pain fully credible in light of the record; specifically, Claimant argues the ALJ's decision is internally inconsistent and not supported by the overall record. Pl.'s Mem. [DE-25-1] at 11–19. Defendant argues that the record supports the ALJ's RFC finding. Def.'s Mem. [DE-27] at 7–13.

Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, including whether the claimant's statements are supported by the objective medical record. SSR 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so

7

where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p, 2016 WL 1119029, at *6; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

The ALJ recounted Claimant's hearing testimony as follows:

> The claimant alleged limitations in her ability to perform basic work functions based on her physical and mental impairments. The claimant noted she has not driven since 2013. The claimant indicated she can sit for up to five minutes then needs to stand for a few minutes due to pain. The claimant testified she can stand for three minutes with the use of an assistive device, then needs to sit or lay down. The claimant asserted she can walk ten to fifteen steps then needs to sit. The claimant alleged that although she has had several knee arthroscopies, she has not gotten better, but has gotten worse. The claimant stated she can lift and carry no more than three pounds and has problems with stooping, kneeling, crawling, and crouching. The claimant noted she is in constant pain every day that is a nine or ten out of ten, and it is still an eight when taking medications. The claimant described that her pain is focused on her lower back and bilateral lower extremities. The claimant indicated she also has numbness and tingling of her right foot and ankle. The claimant testified she has trouble concentrating, focusing, and dealing with day-to- day issues. The claimant indicated she also has trouble remembering things. The claimant asserted she has trouble reading and feels down. The claimant alleged her psychotropic medications do not really work to treat her symptoms. The claimant stated she does not deal with people well due to anger outbursts, causing her to stay mostly to herself. The claimant noted she does not do any of her activities of daily living on her own and gets help from her sister to complete these activities. The claimant described her average day as watching TV and sleeping on and off. The claimant testified she has side effects from her medications that include dizziness and drowsiness. The claimant

8

> indicated she had twenty falls since 2016, and in one year she reported to her doctor five times because of falls.

(R. 22–23). The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 23). Despite Claimant's testimony that due to pain she could only sit for up to five minutes before needing to stand for a few minutes, stand for three minutes with the use of an assistive device before needing to sit or lay down, and walk ten to fifteen steps before needing to sit, the ALJ determined Claimant could perform a limited range of sedentary work with the use of a cane and postural, environmental, and mental restrictions.

The ALJ summarized evidence from 2016 through 2019 related to Claimant's lower back pain that radiates to her right lower extremity and knee pain, which included a diagnosis of chronic pain syndrome; a history of falls due to her knee giving out; treatment for pain with opioids and several epidural steroid injections; use of a cane; decompression surgery in July 2016; a left knee arthroscopy in March 2017, after which her lower back pain increased; numbness and tingling in her bilateral lower extremities; right knee arthroscopy in 2018; morbid obesity; and positive examination findings such as left knee and lumbar spine tenderness, right knee crepitus, abnormal gait, and reduced and painful range and of motion in the lumbar spine and knee. (R. 23–27). The ALJ also noted imaging in 2016 that showed mild joint space narrowing medially in the right knee, and lumbar spondylosis with stenosis at right L4-L5 and L5-S1; imaging in 2017 that showed near complete rupture of the ACL and PCL in the left knee, and degenerative disc disease at L5-S1 with some facet arthrosis; and imaging in 2018 that

9

showed disc protrusion centrally and to the right with annular tear with mass effect on the traversing right L5 nerve root, L5-S1 broad-based right paracentral disc protrusion that mildly narrows right subarticular recess and mildly effaces the right S1 root, and chondromalacia and a lateral meniscus tear of the right knee. *Id.*

The ALJ then listed evidence he believed contradicted the above evidence. The ALJ explained that "[a]lthough the claimant showed decreased lumbar spine range of motion, the claimant was noted with normal spinal curvature and negative bilateral straight leg raise," as well as normal motor function, (citing Exhibits B10F/22; B27F/10; B29F/38, 90, 117, 151, 189, 196, 203; B41F/12, 20, 31, 40, 66, 72; B51F/3; B54F/8, 15, 23);[5] "[e]ven though the claimant noted bilateral lower extremity numbness and tingling, examinations showed the claimant with normal sensation in her lower extremities and she had a normal electromyography," (citing Exhibits B10F/22; B11F/14, 15, 18; B20F/9; B27F/10; B29F/6, 14, 24, 90, 107, 112, 117, 151, 189, 196, 203; B40F/1; B41F/12, 20, 31, 40, 66, 72, 78; B44F/2; B51F/3; B54F/8, 15, 23); "[d]espite the claimant's decreased bilateral knee range of motion, the claimant exhibited right knee joint stability on examination," as well as normal special right knee testing (including Lachman's, McMurry's, and Apley's compression tests) and at times, normal lower extremity range of motion except for the right hip (citing Exhibits B27F/10; B29F/38, 189, 204; B30F/6; B41F/66, 72; B51F/3); "[e]ven though the claimant stated she could handle no more than three pounds, examination showed the claimant with normal muscle strength, bulk, tone, and power," as well as admitted improvement in pain after surgery (citing Exhibits B11F/14, 18, 23; B20F/9; B21F/4; B29F/91, 100, 107, 112, 151; B40F/1; B41F/12, 20, 31, 40; B44F/2, 5; B48F/4, 14, 20, 26; B52F/3; B54F/8, 15, 23); and "[d]espite the claimant's occasional abnormal gait, the claimant

---

[5] The ALJ also cited Exhibit B17F/122 throughout the decision, but this Exhibit does not exist as Exhibit B17F is only 54 pages long. (R. 24, 25, 28, 29, 31, 1314–67).

10

was noted with normal balance and coordination on examinations," (citing Exhibits B10F/41; B11F/18). (R. 23–28). The ALJ also noted that Claimant stated her medications offered improvement in her activities of daily living and quality of life, (citing Exhibit B29F/193; B40F/15; B41F/27; B48F/23); she did not report side effects from her medications and stated that her daytime drowsiness was resolved by her CPAP, (citing Exhibits B7F/4; B17F/42; B29F/187; B40F/15; B52F/2); she reported she was able to travel to Myrtle Beach and Maryland with her mother, (Exhibit B40F/5); and she reported helping more with chores around the house, (Exhibit B40F/25). (R. 24, 27–28).

Much of the evidence cited by the ALJ in discounting Claimant's subjective statements regarding her symptoms and limitations constitutes impermissible cherry-picking of evidence favorable to the ALJ's decision, while ignoring evidence in the same treatment notes that would arguably support the claim of disability. For example, the ALJ characterized Claimant's abnormal gait as "occasional," (R. 24), when the record is replete with references to her abnormal gait, *see e.g.*, (R. 1061, 1067, 1073, 1078, 1084, 1092, 1099, 1110, 1115, 1120, 1124, 1128, 1136, 1153, 1167, 1353, 1568, 2367, 2374, 2382, 2402, 2421, 2563, 2609). As another example, the ALJ discounted evidence demonstrating decreased lumbar spine range of motion, because Claimant was at times noted with normal spinal curvature, negative bilateral straight leg raise testing, and normal motor function. (R. 23, 25–27). The treatment notes cited by the ALJ indicate that Claimant had normal spinal curvature prior to her lumbar laminectomy on July 11, 2016 and, thereafter, Claimant was noted to have diminished curvature of the lumbar spine, *see, e.g.*, (R. 1061, 1067, 1072, 1077, 1083, 1092, 1098, 1109, 1115, 1808, 1814, 1822). It is not apparent how the fact that Claimant had normal spinal curvature prior to her unsuccessful

11

laminectomy[6] contradicts complaints of debilitating pain and evidence that Claimant frequently exhibited painful, decreased lumbar spine range of motion. (R. 1625, 1643, 1709–10, 1736, 1770, 1808, 1814–15, 1822, 2374, 2382, 2393, 2402, 2440, 2683, 2689, 2698). The treatment notes the ALJ cited demonstrating Claimant had negative bilateral straight leg raise testing and normal motor function also indicate that Claimant was positive for paraspinal tenderness, had painful and limited range of motion of the lumbar spine, had an antalgic and stiff gait (many times with the use of a cane noted), had positive facet loading and prone extension test bilateral, was positive for SI joint tenderness bilaterally, and was positive for Patrick's, Thigh Thrust, and lateral compression, right side. *Id.* She also reported at those visits an average pain score ranging from six to ten and constant pain that interfered with daily activities, for which she received multiple injections that provided short term relief and was prescribed opioids that only somewhat reduced her pain. *Id.*

In *Lewis v. Berryhill*, the court explained that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." 858 F.3d 858, 869 (4th Cir. 2017) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). The court in *Lewis*, found the ALJ erred by relying on medical records containing "normal" findings but ignoring in those same records notations that the claimant experienced symptoms such as stabbing, burning, throbbing, tingling, and constant pain that increases with elevating the hand above the shoulder and decreases by rest; that a left shoulder MRI showed sclerotic lesion; left shoulder pain with marked discomfort on range of motion with pain on shoulder abduction and extension of arm; and that the claimant was given a steroid injection into her shoulder at the conclusion of the

---

[6] The ALJ found that Claimant's post-laminectomy syndrome was a severe impairment. (R. 18).

appointment. *Id.* The ALJ in this case similarly erred by cherry-picking evidence from the record to discount Claimant's subjective complaints of pain while ignoring evidence in the same treatment notes that would tend to support her statements.

The ALJ also points to Claimant's statements that her medications offered improvement in her activities of daily living and quality of life, (citing Exhibit B29F/193; B40F/15; B41F/27; B48F/23); she did not report side effects from her medications and stated that her daytime drowsiness was resolved by her CPAP, (citing Exhibits B7F/4; B17F/42; B29F/187; B40F/15; B52F/2); she reported she was able to travel to Myrtle Beach and Maryland with her mother, (Exhibit B40F/5); and she reported helping more with chores around the house, (Exhibit B40F/25). (R. 24, 27–28). However, the ALJ's decision here suffers from the same deficiency noted above. While some treatment notes do report that medication provided Claimant with improvement in function, activities of daily living, and quality of life and that she was generally engaging in more chores, there is no indication to what extent Claimant was performing activities and Claimant continued to report high pain levels that interfered with her daily chores, employment, exercise, grooming, mood, sleep, relationships, and walking. (R. 1812); *see Lewis*, (finding the ALJ's reliance on a claimant's ability to perform incremental activities did not demonstrate she was capable of work) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.")); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 99 (4th Cir. 2020) ("An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them.") (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Similarly, a February 11, 2019 treatment note cited by the ALJ, from pain management related to Claimant's interest in a spinal cord stimulator, stated that Claimant

13

reported "lessened pain with her knee" and that water therapy was helpful, also stated that she was still in recovery from knee surgery, (R. 2327), and a subsequent treatment note from March 27, 2019, indicated Claimant continued to have difficulty after her third knee surgery and had to stop water therapy due to limited ability to move her knee, (R. 2317). (R. 27). The ALJ also cited a record indicating Claimant's pain was improved for two weeks after receiving an SI joint injection on the right side on February 12, 2019; however, she also reported her pain level was a seven, (R. 2389), and she reported worsening pain at a subsequent visit on May 23, 2019 and was scheduled for another injection, (R. 2364–68).

Because the ALJ cherrypicked evidence while ignoring evidence consistent with Claimant's testimony that points to a disability finding in contravention of *Lewis*, the court cannot find the ALJ's decision is supported by substantial evidence and remand is required.

### 2. Medical Opinion Evidence

Claimant contends the opinion of Dr. Jamie Evans, her treating physician, was entitled to great weight because it is supported by the overall record, including Dr. Evans's clinical observations, diagnoses, and treatment. Pl.'s Mem. [DE-25-1] at 20–21. Defendant argues that the ALJ properly evaluated the opinion evidence. Def.'s Mem. [DE-27] at 14–17.

As explained above, the ALJ's decision expressly states that he applied §§ 404.1527 and 416.920 when evaluating the opinion evidence. (R. 22). When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who

14

usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted). However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v.*

15

*Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

Dr. Evans provided several opinions regarding Claimant's functional limitations. The ALJ gave little weight to Dr. Evans's opinion that Claimant would likely be unable to sustain gainful employment because it is on an issue reserved to the Commissioner and is not a function-by-function assessment of Claimant's ability to perform work function. (R. 30, 1509, 1613, 2442–49). The ALJ gave limited weight to Dr. Evans's opinion regarding Claimant's specific functional limitations because it was not supported by Dr. Evans's treatment notes or consistent with the overall evidence previously described in the ALJ's decision. (R. 30–31, 1369, 2251–54, 2260). The ALJ explained,

> Dr. Evans also opined the claimant sit for five to ten minutes at one time and for no more than two hours in an eight-hour day; can stand and walk between five to ten minutes at one time; will need to walk around every ten to fifteen minutes for between 3-5 minutes; will need to alternate between sitting and standing at-will; will need unscheduled breaks of fifteen minutes; will need to elevate her leg for fifty percent of the day; will need to use an assistive device; can never lift more than twenty pounds; can never twist, stoop, crouch, squat, or climb stairs; had severe manipulative limitations; and will miss more than four days a month (Exhibit B28F; B33F/22-25). In an earlier letter, Dr. Evans also described significant functional limitations (Exhibit B18F). These opinions are given limited weight (are not persuasive), as the severity of the limitations is not supported by Dr. Evans' treatment notes or consistent with the overall evidence of record, as described herein. While Dr. Evans' examinations did show some abnormal musculoskeletal findings, they also showed no acute distress, alert and oriented, negative straight leg raise, normal sensation, and normal strength (Exhibits B17F/1-5, 122, 123; B26F; B33F). The overall medical evidence of record showed morbid obesity, reduced lumbar spine range of motion, reduced bilateral lower extremity range of motion, and abnormal gait, but also normal motor function, negative straight leg raise, normal strength and tone in the bilateral lower extremities, and normal sensation in the bilateral lower extremities. The claimant also noted improvement in pain with medication and after surgery, with improvement in daily activity.

(R. 30–31). In support of his reasoning, the ALJ specifically cited a treatment note from a June 27, 2017 appointment with Dr. Evans related to weight management, (R. 1314); Exhibit

16

B17F/122 and 123, which as noted above does not exist; treatment notes from July 21, 2017 through January 23, 2018 appointments with Dr. Evans related to weight management and blood pressure, (R. 1542–70); and treatment notes from February 14, 2018 through October 19, 2018 appointments with Dr. Evans related to weight management, stomach pain, fluid retention, and a yeast infection, (R. 2230–46); and the ALJ generally cited "the overall medical evidence of record." (R. 30–31).

Dr. Evans's treatment notes indicate that, as Claimant's primary care provider, she treated Claimant's obesity and other non-chronic health issues that arose, but referred Claimant to specialists for treatment of her back and lower extremity pain, which Dr. Evans repeatedly stated was the cause for Claimant's functional limitations. (R. 1509–10, 2251, 2442-49); *see Lewis*, 858 F.3d at 868 (finding "the ALJ erred by failing to appreciate the consistent prognosis of Lewis' treating physicians in contravention of the mandate that 'controlling weight' be accorded to such opinions.") (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). As explained in detail above, when considering evidence related to Claimant's pain from her lumbar and knee impairments, the ALJ cherrypicked evidence while ignoring evidence consistent with Claimant's testimony that points to a disability. Thus, the ALJ's reliance on his prior explanation regarding this evidence and the "overall record" does not support his decision to discount Dr. Evans's opinion. Because this evidence was most relevant to Dr. Evans's opinion, which corroborates Claimant's subjective complaints, the ALJ did not properly consider critical aspects of Claimant's medical history when evaluating Dr. Evans's opinion, and remand is required for the ALJ to re-weigh Dr. Evans's opinion.

### 3. Obesity

Claimant contends her obesity is a medically determinable impairment that impacts her

17

overall health, including sleep apnea, high blood pressure, fatigue, increased pain, osteoarthritis, and depression, and the ALJ failed to properly analyze it as required by SSR 02-1p. Pl.'s Mem. [DE-25-1] at 22. SSR 02-1p was rescinded and replaced by SSR 19-2p effective May 20, 2019, prior to the ALJ's decision in this case and, thus, SSR 19-2p applies in this case. *See* SSR 19-2p, 2019 WL 2374244, at *5 n.14 (explaining SSR 19-2p will be used in any decision made on or after its applicable date).

SSR 19-2p recognizes that obesity can be a medically determinable impairment, people with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately. *Id.* at *2. While obesity is not a listed impairment, the functional limitations caused by obesity, either alone or in combination with another impairment, may medically equal a listing and may or may not increase the severity or functional limitations of other impairments. *Id.* The ALJ must consider the limiting effects of obesity when assessing a claimant's RFC. *Id.* at 4.

Here, the ALJ determined that Claimant's obesity was a severe impairment and stated that Claimant's "obesity and its effects on her other body systems [was considered] at each applicable step of the sequential evaluation process, in accordance with paragraphs 1.00Q, 3.00O and 4.00I1, and SSR 19-2p," and in formulating the RFC. (R. 18, 20, 22). The ALJ acknowledged that Claimant had a body mass index (BMI) of between forty and fifty during the relevant period, noted that the overall medical evidence of record showed morbid obesity, and explained the RFC limitation that Claimant required the use of an assistive device was in part due to her obesity. (R. 20, 28, 31); *see* SSR 19-2p, 2019 WL 2374244, at *4 ("someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person

18

would have due to the arthritis alone."). The ALJ also imposed environmental limitations and allowed some time off task due to daytime fatigue from Claimant's obstructive sleep apnea. (R. 29); *see* SSR 19-2p, 2019 WL 2374244, at *4 ("In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea."). The ALJ's decision reflects sufficient consideration of Claimant's obesity in accordance with SSR 19-2p.

### B. The Hypothetical to the VE

Claimant contends the ALJ erred in failing to include all of Claimant's limitations in the hypothetical to the VE. Pl.'s Mem. [DE-25-1] at 10–11.

The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record).

Given that the ALJ's reconsideration of Claimant's subjective complaints of pain and Dr. Evans's opinion may impact the ALJ's RFC limitations, the ALJ should reconsider the hypothetical posed to the VE, as necessary, on remand. The court expresses no opinion on the outcome of the claims on remand.

### VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-25]

19

is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-26] is DENIED and the case is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

SO ORDERED, this the 14th day of March 2022.

Robert B. Jones, Jr.
United States Magistrate Judge